# EXHIBIT A

**RECEIVED**

**JUN 04 2007**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA A. BRONTE and WADE A. THOMSON, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF DEFENSE, <br><br> Defendant. | No. 07C 3114 <br><br> JUDGE HOLDERMAN <br><br> MAG... |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552 *et seq.*, seeking an order requiring the Defendant, Department of Defense and its components ("DoD"), to immediately produce records requested by the Plaintiffs.

2. On January 2, 2007, Plaintiffs submitted their initial FOIA request ("Request") to the Defendant. (See Exhibit A, attached hereto.)

3. The Request sought records pertaining to men, represented by Plaintiffs and their colleagues on a pro bono basis, who are imprisoned at Guantánamo Bay Naval Station by the DoD. *Id.* Specifically, the Request sought "all unclassified records reviewed, considered, presented or generated in connection with the Administrative Review Board (ARB) process and pertaining to these clients, including but not limited to all unclassified records relating to any and all allegations against our clients." (Exhibit A.)

4. Notably, the Request sought only *unclassified* information related to Plaintiffs' clients.

5. Despite repeated communications with a DoD representative about the Request over the past six months, DoD has failed to provide an initial determination on the Request and has failed to produce any documents (not already publicly available).

6. To enforce the Plaintiffs' right to access public information, Plaintiffs seek an order requiring Defendant to immediately process the Request and to release all records that have been unlawfully withheld.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action and these parties pursuant to 5 U.S.C. §§ 522(a)(4)(B) and 522 (a)(6)(E)(iii). Venue is proper pursuant to 5 U.S.C. § 552 (a)(4)(A) and (B).

## THE PARTIES

8. Plaintiffs are attorneys at Jenner & Block LLP, 330 N. Wabash Ave., Chicago, Illinois 60611. They are licensed to practice law in the state of Illinois and both reside within this district. Plaintiffs, along with their colleagues, represent on a pro bono basis several prisoners imprisoned at Guantánamo Bay Naval Station at Guantánamo Bay, Cuba.

9. Defendant DoD is a Department of the executive branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552 (f)(1).

# FACTS

## I. IMPRISONMENT OF GUANTÁNAMO BAY PRISONERS, COMBATANT STATUS REVIEW TRIBUNALS, AND ADMINISTRATIVE REVIEW BOARDS.

10. Plaintiffs' clients, along with several hundred other men, were detained and taken to Guantánamo Bay Naval Station at Guantánamo Bay, Cuba, where they have been imprisoned for years without being charged with any crime and without receiving an impartial hearing of any kind. None of Plaintiffs' clients have been charged by any military commission.

11. Plaintiffs and their colleagues have represented their clients on a pro bono basis in challenging their imprisonment.

12. Nine days after the Supreme Court decision in *Rasul v. Bush,* 542 U.S. 466 (2004), then Deputy Secretary of Defense, Paul Wolfowitz, established Combatant Status Review Tribunals ("CSRTs") to affirm the previous assertion by senior Administration and military officials that *all* the prisoners at Guantánamo Bay were "enemy combatants" who could be detained until the end of the War on Terrorism.

13. The CSRT is a non-adversarial proceeding at which a Guantánamo prisoner bears the burden of proving to a three-member military panel that secret, hearsay information he cannot see, but which is presumed to be reliable and correct, does not support his prior designation as an "enemy combatant." The prisoner must make this showing without legal assistance, and without a meaningful opportunity to present evidence of innocence.

14. For each CSRT, the prisoner was to be provided "in advance of the proceedings with notice of the unclassified factual basis for the prisoner's designation as an enemy combatant." (See DoD July 7, 2004 Order Establishing Combatant Status Review Tribunal, attached hereto as Exhibit B, at 2.)

15. For each CSRT, the record "shall consist of all the documentary evidence presented to the Tribunal, the Recorder's summary of all witness testimony, a written report to the Tribunal, the Recorder's summary of all witness testimony, a written report of the Tribunal's decision, and a recording of the proceedings." (*Id.*)

16. On information and belief, Defendant conducted CSRTs for Plaintiffs' clients between August 2004 and January 2005, approximately three years after they arrived at Guantánamo.

17. On May 11, 2004, then Deputy Secretary of Defense, Paul Wolfowitz, established Administrative Review Board ("ARB") procedures purportedly to determine annually if prisoners detained by DoD at Guantánamo should be released, transferred or continue to be detained.

18. ARBs were held in 2005 ("Round 1"), 2006 ("Round 2"), and 2007. For each ARB, whether or not a prisoner elected to participate in the ARB process, a prisoner was to be provided notice of the ARB review and a written unclassified summary containing factors favoring continued detention and factors favoring release or transfer of the prisoner. (See DoD September 14, 2004 Revised Implementation of Administrative Review Procedures for Enemy Combatants Detained at U.S. Naval Base Guantánamo Bay, Cuba, attached hereto as Exhibit C, Encl. 3, at 2.)

4

19. According to the DoD procedures, the ARBs "shall conduct such proceedings as necessary to make a written assessment of whether the enemy combatant continues to pose a threat to the United States or its allies in the ongoing armed conflict against al Qaida and its affiliates and supporters, and/or whether there are other factors bearing upon the need for continued detention. Based on that assessment, the ARB shall provide a written recommendation to the Designated Civilian Official (DCO)." (See *id.* at 1.) As part of its mandate, the ARB must conduct a "comprehensive review of all reasonably available and relevant information" which should include "any prior detention evaluation." This would presumably include the CSRT record.

20. On information and belief, Defendant conducted ARBs for Plaintiffs' clients in 2005 and 2006.

21. Defendant has consistently resisted efforts by the press and by lawyers representing Guantánamo prisoners to obtain CSRT and ARB records. In response to orders entered in prior FOIA proceedings brought by the Associated Press and in *habeas corpus* proceedings, Defendant has made public a portion of some of the CSRT and ARB records.

22. On December 22, 2006, DoD informed Plaintiffs and their colleagues that, as in prior years, they could not participate in the ARBs and would not be informed of the dates of the ARBs or the outcome thereof. DoD stated that Plaintiffs would be allowed to submit materials supporting their clients' positions for the upcoming 2007 ARBs. DoD instructed Plaintiffs that any materials submitted must be received by February 23, 2007.

5

23. Because of numerous legal and logistical hurdles, Plaintiffs and their colleagues have had to work extremely hard to gather any information supporting Defendant's view that their clients are "enemy combatants." In order to submit more evidence in support of their clients' release, Plaintiffs filed a FOIA request seeking documents considered, presented or generated in connection with the Administrative Review Board process and pertaining to their clients.

## II. PLAINTIFFS' FOIA REQUEST AND DoD'S FAILURE TO PRODUCE DOCUMENTS.

24. On January 2, 2007, Plaintiffs submitted their FOIA request via the DoD website's FOIA Request Form. The Request in its entirety is as follows:

> We are attorneys, on a pro bono basis, for the prisoners at Guantánamo Bay, Cuba listed below. We seek all unclassified records reviewed, considered, presented or generated in connection with the Administrative Review Board (ARB) process and pertaining to these clients, including but not limited to all unclassified records relating to any and all allegations against our clients:
>
> * Ziyad bin Salih bin Muhammad Al-Bahooth (ISN 272)
> * Salim Said (ISN 126)
> * Saad Al Qahtani (ISN 200)
> * Bandar Al Jaabir (ISN 182)
> * Mohammed Zahrani (ISN 713)
> * Khaled Mallouh Shaye Alghatani (ISN 439)
> * Achraf Salim ("Sultan") Abdessalam (ISN 263)
> * Abdul Rahman Abdul Abu Ghityh Sulayman (ISN 223)
> * Musaab Omar Al Madhwani (ISN 839)
> * Jawad Jabbar Sadkhan (ISN 433)
>
> There should be no fee for disclosure of these records as their release would be in the public interest and would further the public's understanding of our government's operations at Guantánamo and in the War on Terror. The records requested would very likely be used in our public filings with federal courts and thus would be widely available to the public. Our representation of these prisoners is on a pro bono basis, thus we have no commercial interest in these records.

(Exhibit A.)

25. DoD assigned Case No. 07-F-0644 to the Request and deemed it "received" as of January 3, 2007. (Exhibit D.)

26. On January 8, 2007, Aaron Graves, identified in his emails as "Freedom of Information Analyst" for DoD, called Ms. Bronte, indicating that he was assigned to the FOIA Request.

27. Mr. Graves sent an email to Mr. Thomson on January 9, 2007, discussing Mr. Graves's January 8 conversation with Ms. Bronte. (Exhibit E.) Mr. Graves told Plaintiffs that many of the CSRTs and Round 1 ARBs were available on the DoD website as a result of FOIA litigation involving the Associated Press. Mr. Graves said that this would be "all that we have on a prisoner during round one of the CSRT and ARB's." Mr. Graves also stated that he believed many of the Round 2 ARBs would not yet be available because those decisions were not final. Ms. Bronte informed Mr. Graves that, according to the DoD website, more than 211 Round 2 ARBs had been completed. Mr. Graves promised to check again for Round 2 ARBs. (Exhibit E.)

28. On January 19, 2007, Plaintiffs called Mr. Graves. During the call, Plaintiffs expressed their concern that they receive documents as soon as possible because they and their colleagues were facing a February 23, 2007 submission deadline for the 2007 ("Round 3") ARB process. Plaintiffs discussed with Mr. Graves the fact that the DoD website lacked many responsive documents for several of Plaintiffs' clients. Moreover, Plaintiffs explained that even if some clients had elected not to participate in ARBs, Plaintiffs' Request was broad enough to cover some documentation of that fact.

7

Mr. Graves agreed with Plaintiffs that the response to the Request should be expedited because Plaintiffs had requested only "unclassified documents." On the same date, Plaintiffs sent a letter to Mr. Graves confirming and summarizing the results of the phone call and a chart showing the documents missing from the DoD website. (Exhibit F.)

29. On January 23, 2007, Mr. Graves sent an email to Plaintiffs, updating them on the progress of the Request. (Exhibit G.) Mr. Graves indicated that an initial review of responsive documents was "just about finished" but that additional reviews by "other offices/agencies" might be required. Mr. Graves was hopeful that he could produce documents to Plaintiffs before their February 23, 2007 ARB submissions deadline but explained he had a heavy backlog of other FOIA requests and that further review could delay the processing of any documents.

30. On January 24, 2007, Mr. Graves sent another email to Plaintiffs, responding to Plaintiffs' January 19 letter. (Exhibit H.) Mr. Graves wrote that he did not believe he had to go through other agencies to complete his part of the review, but that the DoD Office of General Counsel might need to provide a "final blessing." If that were the case, Mr. Graves wrote, it would most likely mean that Plaintiffs would not receive documents before February 23, 2007. Mr. Graves also asked if Plaintiffs were requesting the CSRT documents referenced in their communications with Mr. Graves. Mr. Graves stated that the DoD did in fact have Round 1 ARB documents for all of Plaintiffs' clients and Round 2 ARB documents for all but two of Plaintiffs' clients, Jawad Jabbar Sadkhan (ISN 433) and Musa'ab Omar Al Madhwani (ISN 839), which had not yet been processed.

31. On January 30, 2007, Plaintiffs called Mr. Graves to respond to his January 23 and 24 emails. Plaintiffs told Mr. Graves that they would not seek CSRT documents as part of their Request if that would slow down a response. Mr. Graves said that he had already received the responsive CSRT documents along with the ARB materials. Plaintiffs explained that their Request sought CSRT documents as well as ARB documents. Mr. Graves said that he had received all the responsive documents except for Round 2 ARB documents for Mr. Sadkhan (ISN 433) and Mr. Al Madhwani (ISN 839), which were still being processed in Guantánamo. Mr. Graves explained that he might be able to finish his review that week and would then need to send the documents to the Office of General Counsel for "final blessing" if the documents had not already been released publicly. Mr. Graves confirmed that the ARB materials Plaintiffs would receive pursuant to their Request would be more extensive than the materials available through the DoD website, and would contain approximately 20-30 pages for each prisoner.

32. On February 7, 2007, Plaintiffs called Mr. Graves. Mr. Graves stated that he had not yet finished his part of the review. He said he did send some Round 1 ARB documents to the Office of General Counsel to see if they would be able to give a "green light" on similar documents. Mr. Graves said the Office of General Counsel told him that because some FBI documents were included in the materials, the materials would also have to be reviewed by the FBI. Ms. Bronte asked how much of the material was FBI-related and whether it would expedite a response to the Request if Plaintiffs excluded the FBI documents. Mr. Graves responded that, for example, approximately 7 of the 30-40 pages for Achraf Salim Abdessalam (ISN 263) were FBI documents. He also informed

9

Plaintiffs that he asked the Office of General Counsel the same question Ms. Bronte asked him, and that the Office of General Counsel told Mr. Graves that all of the documents needed to be sent to the FBI. Because Plaintiffs were requesting only unclassified documents, Ms. Bronte insisted that Mr. Graves tell the Office of General Counsel that Plaintiffs wanted to talk to them directly about this process. Plaintiffs explained that they should be able to receive documents on a rolling basis, including all non-FBI documents.

33.     On February 8, 2007, Mr. Graves emailed Plaintiffs. (Exhibit I.) Mr. Graves stated that he spoke with the Office of General Counsel and sent them all of the ARB documents for their review. He wrote that he told the Office of General Counsel about Plaintiffs' February 23, 2007 deadline and was told that the Office of General Counsel would send the documents back to Mr. Graves "asap." Mr. Graves wrote that he asked the lawyer at the Office of General Counsel about Ms. Bronte's request to speak with someone from the Office of General Counsel directly, but "she said that she would prefer not to give her contact information out." Mr. Graves stated that he had not received the CSRT documents and that it was unlikely he would be able to send documents to Plaintiffs before February 23, 2007.

34.     Also on February 8, 2007, Ms. Bronte responded with an email stating that Plaintiffs appreciated Mr. Graves's efforts but would like to see at least some documents produced on a rolling basis. (Exhibit J.)

35.     On March 9, 2007, Plaintiffs called Mr. Graves. He said that the Request had gone up to the Office of General Counsel, then back to Mr. Graves with a question,

and then the Office of General Counsel gave it to another attorney on February 22, 2007 who was supposedly "finalizing" it. At Plaintiffs' request, Mr. Graves agreed to do two things: (1) speak with the attorney about "finalizing" the response to the Request; and (2) check to see if the Round 2 ARBs for Jawad Jabbar Sadkhan (ISN 433) and Musa'ab Omar Al Madhwani (ISN 839) had become available.

36. On March 12, 2007, Mr. Graves emailed Plaintiffs. (Exhibit K.) He stated that he contacted someone in the Office of General Counsel to get an update on the review of documents relating to the Request but had not heard back. He said he also contacted the office responsible for locating the documents and asked them to do another search for the Round 2 ARBs for Jawad Jabbar Sadkhan (ISN 433) and Musa'ab Omar Al Madhwani (ISN 839).

37. On April 3, 2007, Mr. Thomson emailed Mr. Graves and asked (1) whether Mr. Graves had been able to get in touch with anyone from the Office of General Counsel to check on the status of the Request, and requested a status update from Mr. Graves; and (2) whether Mr. Graves had heard anything regarding the search for the Round 2 ARBs for Jawad Jabbar Sadkhan (ISN 433) and Musa'ab Omar Al Madhwani (ISN 839). (Exhibit L.) Mr. Thomson again expressed Plaintiffs' position that they would be happy to receive documents on a rolling basis.

38. Mr. Graves did not respond to Mr. Thomson's April 3, 2007 email.

39. On April 6, 2007, Plaintiffs called Mr. Graves. Mr. Graves stated that he had not heard back from the Office of General Counsel about the status of the Request. He said that the "only things getting out of the OGC are things that are being litigated."

Plaintiffs said they wanted to avoid litigation, but unless they received some response soon, they would be forced to litigate their Request. Mr. Graves said he understood.

40.     On May 24, 2007, Mr. Thomson sent an email to Mr. Graves. (See Exhibit M.) Mr. Thomson asked for an update on the status of Plaintiffs' Request and explained that to date Plaintiffs had received no documents pursuant to their Request and had not even "been told for certain that [they] will be receiving any documents. If DoD is going to produce documents, please provide us an anticipated date." Mr. Thomson reiterated that "while [Plaintiffs] hope to avoid litigation in this matter, it is more and more appearing that our hand is being forced."

41.     On May 25, 2007, Mr. Graves wrote an email responding to Mr. Thomson's May 24 email. (See Exhibit M.) Mr. Graves stated that he still had not heard anything more from the Office of General Counsel and wrote that he would continue trying to obtain "any sort of estimate" on completing a response to Plaintiffs' Request.

42.     As of the date of this Complaint, Defendant has not provided an initial determination as to Plaintiffs' Request, which was made more than six months ago.

43.     As of the date of this Complaint, Defendant has neither provided Plaintiffs with any requests for an extension of time nor indicated an anticipated date for a substantive response to Plaintiffs' Request.

44.     As of the date of this Complaint, Defendant has produced no documents pursuant to Plaintiffs' Request.

45. By failing to respond substantively to any of Plaintiffs' requests within the statutory twenty-day period, Defendant has constructively denied those requests.

46. Based on Defendant's delay in responding to Plaintiffs' Request, and the Office of General Counsel's refusal to discuss this matter with Plaintiffs, it would be futile for Plaintiffs to file administrative appeals or to wait additional time to receive a substantive response from Defendant.

47. Defendant has wrongfully withheld the requested records from Plaintiffs.

## COUNT I — DEFENDANT'S VIOLATION OF FREEDOM OF INFORMATION ACT

48. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 47 as if set forth fully herein.

49. Because Defendant has failed to provide an initial determination within the applicable time limit, Plaintiffs are deemed to have exhausted their administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

50. Pursuant to 5 U.S.C. § 552(a)(3), Plaintiffs have a right of access to the information and documents requested in their FOIA Request.

51. Defendant has no legal basis for refusing to disclose this information and these documents to Plaintiffs. Defendant has unlawfully withheld the records requested by Plaintiffs.

WHEREFORE, Plaintiffs pray that this Court:

a) Declare that Defendant's refusal to release the records requested by Plaintiffs violates FOIA;

b) Enjoin and order Defendant to disclose the requested records in their entireties and to make copies available to Plaintiffs;

c) Provide for expeditious proceedings in this action;

d) Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

e) Grant such other relief as the Court may deem just and proper.

Dated: June 4, 2007

Respectfully submitted,

PLAINTIFFS

By: *Patricia A. Bronte*
One of the Plaintiffs

Patricia A. Bronte
Wade A. Thomson
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Complaint for Injunctive and Declaratory Relief, along with Summons, was served upon the following party by hand delivery on June 4, 2007:

>Patrick J. Fitzgerald
>United States Attorney's Office
>Northern District of Illinois, Eastern Division
>219 S. Dearborn St., 5th Floor
>Chicago, IL 60604

The foregoing Complaint for Injunctive and Declaratory Relief, along with Summons, was also served upon the following parties by certified mail on June 4, 2007:

>Alberto R. Gonzales
>U.S. Department of Justice
>950 Pennsylvania Avenue, NW
>Washington, DC 20530-0001
>
>General Counsel
>United States Department of Defense
>1000 Defense Pentagon
>Washington, D.C., 20301-1000

By: _____

Patricia A. Bronte
Wade A. Thomson
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484